**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51028**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: June 12, 2025** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| PEDRO AYALA, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Hon. Darren B. Simpson, District Judge.

No-contact order <u>vacated</u> and <u>case</u> <u>remanded</u>.

Erik R. Lehtinen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Judge

Pedro Ayala appeals from the district court's entry of a no-contact order. We vacate the no-contact order and remand for modification of that order.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Two sisters, then fifteen and twelve years old, reported to their school counselor that their brother, Ayala, had raped and sexually abused them for several years in their home where they lived with their siblings and parents. As a result, Ayala was charged with seven counts of lewd and lascivious conduct, and the district court entered a no-contact order that prohibited Ayala from having any contact with the victims or his parents.

1

Ayala subsequently filed a motion to modify the no-contact order to allow him to have contact with his parents. At the hearing on the motion, Ayala argued that his parents were not the victims in the case and that his parents wanted to have contact with him. The prosecutor filed a written objection to the request to remove the parents from the no-contact order because both victims were still living with the parents at the time, the parents blame the victims for the charges against Ayala, and the youngest victim had twice attempted suicide. The prosecutor stated that it would not be a good environment for the victims if the parents were having contact with Ayala, noting the parents are "clearly on [Ayala's] side" and do not support the victims. At the time of the hearing, the prosecutor indicated the younger victim was fifteen years old and that the older victim was emancipated and no longer living at the home. The district court ultimately denied the motion, reasoning, "I understand your argument that [the parents] are not victims and you're correct, but they are the parents of the victim and so at this point I'm going to leave the no contact order in place. Those are some issues we can address perhaps during sentencing."

Pursuant to a plea agreement, Ayala pled guilty to an amended charge of battery with the intent to commit a serious felony--lewd and lascivious conduct (I.C. § 18-911), and the State dismissed the remaining charges. During the sentencing hearing, Ayala's counsel again requested the parents be removed from the no-contact order. The State argued the no-contact order should remain in effect because the younger victim had nowhere to go because she was underage. The prosecutor again indicated the parents are not supportive of the victim and did not want her to report Ayala's behavior. The district court ordered the no-contact order with the two victims remain in place and that the no-contact order as to the parents remain in place through any period of imprisonment or parole. The district court sentenced Ayala to a unified term of twenty years, with a minimum period of confinement of six years. Ayala appeals the district court's decision to not remove his parents from the no-contact order.

## II.

## STANDARD OF REVIEW

The district court's decision of whether to issue or modify a no-contact order pursuant to I.C. § 18-920 is one of discretion. *State v. Thompson*, 173 Idaho 244, 247, 540 P.3d 341, 344 (2023). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the

issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

Ayala argues the district court abused its discretion when it failed to modify the no-contact order to exclude his parents as protected individuals since they are not victims or potential victims of the offense to which he pled guilty. Ayala further argues the district court did not exercise reason because there was no evidence, aside from the prosecutor's assertions, that disallowing communication with his parents was necessary to protect the victims. He requests this Court reverse the no-contact order, in part, to allow him to have contact with his parents. The State responds that it was within the district court's discretion to include Ayala's parents in the no-contact order even though they were not victims of Ayala's crimes. We hold that the district court erred in including Ayala's parents in the no-contact order.

Idaho Code Section 18-920(1) provides that, "when a person is charged with or convicted of an offense under section . . . 18-911 . . ., an order forbidding contact with another person may be issued." The purpose of a no-contact order "should be to protect current and future victims of crimes," and the district court has broad discretion over the issuance of such an order. *State v. Lodge*, 166 Idaho 537, 540, 461 P.3d 819, 822 (2020).

Ayala relies on *State v. Thompson*, 173 Idaho 244, 540 P.3d 341 (2023) in support of his argument that his parents should not be included in the no-contact order. In *Thompson*, the defendant challenged the no-contact order entered by the district court because the order prohibited him from contacting his minor son for more than eight years. *Id*. at 246, 540 P.3d at 343. The no-contact order was entered in connection with Thompson's conviction for domestic violence in the presence of a child. *Id*. The district court initially entered a no-contact order prohibiting Thompson from contacting the victim (the mother of Thompson's son) or the three children who were present at the time of the abuse. The order was twice amended to allow Thompson supervised, then unsupervised, contact with his son. At sentencing, the district court amended the no-contact order to permit him to have written communications with the victim. The district court sentenced Thompson and retained jurisdiction. Five months later, the district court relinquished

jurisdiction and ordered that the underlying sentence be served after learning Thompson violated the no-contact order as to the victim. *Id*. at 247, 540 P.3d at 344. Approximately a year later, the victim moved to have the no-contact order amended to prohibit Thompson from contacting her and their four-year-old son. The district court amended the no-contact order to prohibit contact with the victim and the son for eight years. The district court reasoned that the son was a victim of the underlying offense of domestic violence in the presence of a child.

On appeal, Thompson argued that the district court abused its discretion when it amended the no-contact order because there was no evidence that Thompson posed a threat to his son.[1] The Idaho Supreme Court held that the district court abused its discretion and remanded for amendment of the no-contact order. *Id*. at 249, 540 P.3d at 346. The Court considered that the arguments made at the motion hearing focused on Thompson's conduct as to the victim and that the State presented no evidence that Thompson's continued contact with his son negatively impacted his son in any way. *Id*. The Court acknowledged that it might be a hardship for the victim to facilitate Thompson's contact with their son, but ultimately concluded that the victim's wishes alone did not justify prohibiting all contact with their son, especially for such a lengthy period. *Id*. The Court reasoned that the district court failed to articulate any evidence that demonstrated the son was a current or future victim. *Id*. at 248, 540 P.3d at 345. The Court concluded:

> The district court may only grant such a motion if it determines on the record, and based on substantial and competent evidence, that [the son] is a current or future victim of domestic violence. Because that did not occur in this case, we cannot affirm the no contact order to the extent it precludes Thompson from any contact whatsoever with his son.

*Id*. at 249, 540 P.3d at 346.

The Supreme Court noted that *Thompson* was distinguishable from *Lodge*, 166 Idaho 537, 461 P.3d 819. In *Lodge*, the Court concluded the district court did not abuse its discretion when it affirmed a no-contact order prohibiting Lodge from contacting his children. *Id*. at 540, 461 P.3d at 822. Lodge pled guilty to two counts of sexual battery of a minor child and the district court entered a no-contact order prohibiting him from contact with the victims and all minor children,

---

[1] Thompson also argued that the no-contact order violated his fundamental right to parent his son. However, the Idaho Supreme Court concluded this issue was not sufficiently preserved. *Thompson*, 173 Idaho at 250, 540 P.3d at 347.

including his two children. *Id*. at 538, 461 P.3d at 820. On appeal, Lodge argued the district court failed to exercise reason because there was no evidence he was a threat to his children. The Court rejected this argument. When affirming the no-contact order, the Supreme Court considered the district court's statements, including that Lodge had previously assaulted his younger sister and a cousin, Lodge contacted a sixteen-year-old girl fifty times while he was awaiting sentencing, and the psychosexual evaluation indicated Lodge was a high risk to reoffend and there was nothing in the report to suggest his children were immune from his predatory proclivities. *Id*. at 540, 461 P.3d at 822. Because the district court's findings and the psychosexual evaluation supported the conclusion that Thompson posed a threat to his children, the Supreme Court concluded the district court exercised reason and did not abuse its discretion. *Id*.

In this case, the State acknowledges the parents are not victims or future victims. The State asserts that *Thompson* and *Lodge* do not hold that only victims or future victims may be named in no-contact orders. Instead, the State argues it is sufficient that the no-contact order as to the parents serves to protect the victims. The State correctly points out that I.C. § 18-920(1) does not limit the issuance of a no-contact order as to victims but, instead, provides an order "forbidding contact with another person may be issued." Moreover, the Idaho Supreme Court has held the purpose of the statute is to protect current and future victims of crimes. *Lodge*, 166 Idaho at 540, 461 P.3d at 822. We agree that the statute does not expressly limit the issuance of no-contact orders to victims or future victims. However, even accepting the State's position that Idaho caselaw does not limit no-contact orders to victims or future victims, we conclude the district court erred by including the victims' and Ayala's parents as protected individuals.

At the motion hearing, the district court acknowledged the parents were not victims in this case. While the district court articulated that it was going to leave the no-contact order in place as to the parents "at this point" based on the reasoning that "they are the parents of the victim," it indicated its willingness to readdress the issue at sentencing. At sentencing, the arguments presented by the prosecutor emphasized concerns that the younger victim, then fifteen years old, still resided with the parents. Without explanation, the district court ruled that the no-contact order would remain in effect as to the parents "through any period of imprisonment or parole." Based on the district court's imposed sentence, this term could extend to twenty years. Even if the district court was persuaded by the prosecutor's concerns regarding the younger victim still residing with

5

the parents, given the circumstances of this case, the district court's decision to extend the term of the no-contact order to the victims' and Ayala's parents is not supported. While the district court had broad discretion to issue the no-contact order, it needed to explain its reasons for doing so on the record. *See Thompson*, 173 Idaho at 249, 461 P.3d at 346. Unlike *Thompson*, there are no findings by the district court or an evaluation that support the conclusion that Ayala is a threat to his parents or that prohibiting their contact with Ayala is necessary to protect the victims, especially given the lengthy term of the no-contact order. Indeed, to the extent the district court is concerned that the parents' support of Ayala vis-à-vis the victims' allegations against him, there is no evidence such concern requires precluding Ayala from contact with his parents. In this case, the no-contact order protecting the victims, includes protecting the victims from Ayala attempting to contact them through a third party such as their parents. *See* I.C.R. 46.2. Accordingly, we hold that the district court erred by including his non-victim parents in the no-contact order.

## IV.

## CONCLUSION

The district court erred by including Ayala's non-victim parents as protected individuals in the no-contact order. Accordingly, the case is remanded for the limited purpose of the issuance of an amended no-contact order.

Chief Judge GRATTON and Judge TRIBE, **CONCUR**.